UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:23-CV-00174-GNS

ROBERT ANDREW SHARP, JR.                                                                    PLAINTIFF

v.

THE BOWLING GREEN KENTUCKY
POLICE DEPARTMENT et al.                                                                    DEFENDANTS

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (DN 25). The motion is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.   BACKGROUND

Robert Sharp ("Sharp") brought this suit against the City of Bowling Green, Kentucky ("City"), and police officers Stephen Irwin ("Irwin") and Major Joshua Hughes ("Hughes"), in their official and individual capacities (collectively, "Defendants"). (*See* 2d Am. Compl., DN 24). The action is based upon the alleged mistreatment of Sharp by the Bowling Green Police Department ("BGPD") in 2022 and 2023. (2d Am. Compl. ¶¶ 1-4). Sharp, a resident of Bowling Green, claims that he was the victim of BGPD's "unconstitutional policy, practice, or custom" that resulted in his unjust arrest and the ongoing prosecution for the crime of impersonating a peace officer. (2d Am. Compl. ¶¶ 1, 4, 53, 77).

Sharp formerly served as a police officer in the City of Millersville, Tennessee. (2d Am. Compl. ¶ 1). Sharp alleges that in 2002 he was licensed as a "private, armed security guard" through the Tennessee Department of Commerce and Insurance and worked as a traffic control officer in Nashville, Tennessee. (2d Am. Compl. ¶¶ 1, 23). Sharp also states that from 2010 to

1

2013, he worked as deputy constable in Warren County, Kentucky. (2d Am. Compl. ¶ 32). In September 2022, Sharp campaigned to be elected as First District Constable in Bowling Green, but was not elected. (2d Am. Compl. ¶¶ 1, 50). Sharp asserts that BGPD has misused its "police powers for the purpose of targeting individuals based on their familial relationships, political affiliations, or aspirations" and this led "directly to the false charges against [him] and the subsequent violation of [his] constitutional rights." (2d Am. Compl. ¶ 3).[1]

Sharp alleges that on March 26, 2022, he was comforting a neighbor who was the victim of domestic violence, and he spoke with Irwin at Sharp's home and informed Irwin that "he was a former police officer in Tennessee." (2d Am. Compl. ¶¶ 18-19). Sharp asserts that Irwin falsely stated in the police report for the domestic violence incident that Sharp purported to work "for the Metro Nashville Police Department" ("MNPD"). (2d Am. Compl. ¶ 20). Sharp denies ever representing himself as a police officer for MNPD. (2d Am. Compl. ¶ 20).

On September 28, 2022, Sharp returned home to Bowling Green after "working traffic control in Nashville, Tennessee." (2d Am. Compl. ¶ 23). He was wearing his traffic control uniform, consisting of "black uniform pants, a black shirt, and a yellow traffic vest," while carrying "a security badge and security guard license." (2d Am. Compl. ¶¶ 23, 27). Sharp asserts that as part of his campaign for First District Constable, he would keep "posters and fliers in his vehicle to hand out" to neighbors, as well as candy for neighborhood children. (2d Am. Compl. ¶¶ 24, 32). While in his car, Sharp approached "two girls from his neighborhood [who were] walking"

---

[1] Sharp contends that BGPD has violated his rights and prevented him from attaining the elected position of First District Constable in retaliation for his stepfather, who formerly served as the interim BGPD Chief of Police and unsuccessfully sued the City prior to his retirement. (2d Am. Compl. ¶¶ 12-13); *see also Wells v. City of Bowling Green*, 344 S.W.3d 141, 145 (Ky. App. 2011). Indeed, Sharp asserts that he was informed by various third parties that he did not attain employment with BGPD "because of who [he is] related to" and was warned that "should he decide to run for public office [in Bowling Green], he would be targeted and falsely charged with a crime." (2d Am. Compl. ¶¶ 13-15).

and offered them candy. (2d Am. Compl. ¶¶ 24-26). Worrying he may have startled them, he told them he was a "former cop" and showed them his security badge. (2d Am. Compl. ¶¶ 24-26). The children did not approach Sharp's vehicle. (2d Am. Compl. ¶ 27). Sharp later drove around his neighborhood and spoke with other residents, again offering candy and promoting his campaign. (2d Am. Compl. ¶ 28). Irwin arrived in Sharp's neighborhood later in the evening to inquire about Sharp's behavior in handing out candy to children. (2d Am. Compl. ¶ 31).

The following day, Sharp returned to his traffic control job in Nashville and received a phone call from Hughes, who further inquired about the events of the previous night. (2d Am. Compl. ¶¶ 35, 38). Hughes allegedly accused Sharp of referring to himself as a current police officer and working for MNPD in previous conversations with BGPD. (2d Am. Compl. ¶¶ 42-43). Sharp denied these allegations to Hughes and explained that he had resigned from the Millersville Police Department and never had worked for MNPD. (2d Am. Compl. ¶¶ 42-43). BGPD, with the consent of Sharp's wife, allegedly searched Sharp's home on the evening of September 29, 2022. (2d Am. Compl. ¶ 44). During the search, BGPD seized a "commemorative Millersville PD badge from the case where it had been placed." (2d Am. Compl. ¶ 44). Sharp asserts that the commemorative badge, which "stays in [his] cabinet with the other[] [commemorative badges]," was purchased with the permission of the Millersville Police and can be distinguished from an active-duty badge because it does not display a badge number. (2d Am. Compl. ¶ 44). Sharp alleges that BGPD posted the location of Sharp's home on social media, which caused threats to be made against him. (2d Am. Compl. ¶ 45). Plaintiff lost the election for First District Constable on November 6, 2022, to a BGPD officer. (2d Am. Compl. ¶ 50).

Sharp asserts that "[o]n or about December 21, 2022, the BGPD obtained a search warrant and an arrest warrant, which were both based on false allegations that [Sharp] . . . impersonat[ed]

3

a police officer." (2d Am. Compl. ¶ 53). He also contends BGPD confiscated and caused damage to Sharp's property during the arrest.[2] (2d Am. Compl. ¶¶ 54-55). Sharp pled not guilty to his charge and was allegedly denied the ability to file "complaints against the officers who had used excessive force against him." (2d Am. Compl. ¶¶ 56-57). Sharp claims that an officer told him that "he could not take a report 'because there was bias' against [Sharp] 'within the BGPD . . . .'" (2d Am. Compl. ¶ 57). A grand jury indicted Sharp for impersonating a police officer in violation of KRS 519.055, and his proceedings are still ongoing in state court.[3] (2d Am. Compl. ¶¶ 53, 116; Defs.' Mem. Supp. Mot. Dismiss 11, DN 25-1).[4] Sharp alleges that the grand jury proceedings leading to his indictment were unjust, as Hughes and Irwin both falsified information about Sharp's representations as a current police officer in their affidavit and testimony. (2d Am. Compl. ¶¶ 60-75).

In his Second Amended Complaint, Sharp brings the following claims: (1) false arrest under 42 U.S.C. Section 1983 ("Section 1983") against Hughes and Irwin, (2) false imprisonment under Kentucky state law against all Defendants,[5] (3) false imprisonment under Section 1983 against all Defendants, (4) unconstitutional policy or custom under Section 1983 against the City,

---

[2] Sharp alleges that BGPD "kick[ed] over his TV, causing it to break," and took "a DVR recorder, an AR15 with case and accessories, cell phone, [and] [two] ballistic vests." (2d Am. Compl. ¶ 55).
[3] Initially, Sharp was also charged with the crime of "fleeing or evading police;" however, this charge has been dismissed with prejudice. (Notice to Ct., DN 28).
[4] Sharp does not directly state that he was indicted by the grand jury in the Second Amended Complaint; however, because this is "not subject to reasonable dispute," the Court takes judicial notice of this fact under Fed. R. Evid. 201(b) without converting Defendants' motion to dismiss into one for summary judgment. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 465 (6th Cir. 2014); (*see also* Indictment, DN 25-2).
[5] Under Kentucky law, the previously separate torts of false arrest and false imprisonment have been combined into "false imprisonment." *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007) ("From this point forward, realizing that every confinement of a person is an imprisonment, whether it occurs in a prison or a house, we shall refer to the torts of false imprisonment and false arrest together as false imprisonment.").

(5) malicious prosecution under Section 1983 against Hughes and Irwin,[6] and (6) malicious prosecution under Kentucky state law against all Defendants. Defendants have moved to dismiss all claims (*see* Defs.' Mot. Dismiss, DN 25).

## II.     JURISDICTION

The Court has subject-matter jurisdiction under federal question jurisdiction. 28 U.S.C. § 1331. Supplemental jurisdiction is exercised over the state law claims. *See* 28 U.S.C. § 1367(a).

## III.     STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010)). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the nonmoving party, but "the

---

[6] Sharp styles this claim as "F[alse] A[ffidavit] [of] C[omplaint] [and] L[ying] U[nder] O[ath]." (*See* Second Am. Compl. 24 (edited for capitalization)). Defendants characterize this as a Section 1983 claim for malicious prosecution. (Defs.' Mem. Supp. Mot. Dismiss 6). Sharp also subsequently references his "federal claim for malicious prosecution." (Pl.'s Resp. Defs.' Mot. Dismiss 2, DN 26). As such, this claim shall be analyzed as a malicious prosecution claim under Section 1983.

district court need not accept a bare assertion of legal conclusions." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (internal quotation marks omitted) (citation omitted). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## IV.   DISCUSSION

### A.   *Monell* Liability (Count IV)

Sharp claims that the City is liable under Section 1983 for engaging in an unconstitutional policy or custom "that has encouraged, condoned, and ratified the misuse of police powers for the purpose of targeting individuals based on their familial relationships, political affiliations, or aspirations," and led to "the false charges against [Sharp] and the subsequent violation of [his] constitutional rights." (2d Am. Compl. ¶ 3). Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), municipalities can be held liable for constitutional violations caused by an official policy. *Id.* at 690-91. For a municipality to be liable for the actions of an employee under *Monell*, the alleged constitutional deprivation must have a causal link to a policy or custom of the municipality. *See Deaton v. Montgomery Cnty.*, 989 F.2d 885, 889 (6th Cir. 1993). "*Monell* is a case about responsibility." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). "The official policy requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible." *Id.* at 479-80 (internal quotation marks omitted).

To establish municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). A plaintiff may show the existence of an illegal policy or custom by showing "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). To establish liability under this standard, the municipality's custom must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. "In turn, the notion of law must include [d]eeply embedded traditional ways of carrying out state policy [and] must reflect a course of action deliberately chosen from among various alternatives." *Doe v. Claiborne Cnty. by and through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507-08 (6th Cir. 1996) (first alteration in original) (internal quotation marks omitted) (internal citation omitted) (citation omitted).

Defendants contend that Sharp's "speculative assertions fall well short of what is necessary to state an actionable *Monell* claim." (Defs.' Mem. Supp. Mot. Dismiss 8). Defendants point to Sharp's allegations that Hughes and Irwin conspired "to submit false affidavits and false evidence, all to derail Sharp's candidacy for First District Constable to retaliate against Sharp for his father's purported lawsuit." (Defs.' Mem. Supp. Mot. Dismiss 9). They posit that the claim uses "sweeping, conclusory language" that does not sufficiently allege a custom meeting any of the four methods under *Burgess*. (Defs.' Mem. Supp. Mot. Dismiss 7, 8 (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Burgess*, 735 F.3d at 478))). Sharp counters that his

7

Second Amended Complaint "alleges specific instances of threats and warnings about the official policy of violating rights of persons who had filed lawsuits against the City . . . as part of a retaliatory policy, including targeting [Sharp] for false charges of criminal impersonation." (Pl.'s Resp. Defs.' Mot. Dismiss 5). Specifically, Sharp points to allegations that Defendants "executed duties and responsibilities under color of state law that were made possible and were supported by an unconstitutional policy, practice, or custom of the City of Bowling Green, Kentucky's police department." (2d Am. Compl. ¶¶ 3-4). Sharp also points to allegations that BGPD retaliated against him and his family for his stepfather's lawsuit against the City, and that this retaliation resulted in Sharp being turned down for a job with BGPD and being given warnings by third parties not to run for elected office in Bowling Green. (2d Am. Compl. ¶¶ 11-17).

Although Sharp claims that the "actions of the police officers involved in [his] arrest and charging were not isolated incidents," the facts alleged in the 2d Amended Complaint do not rise to the degree of *Monell* liability. (2d Am. Compl. ¶ 97). Sharp relies on the conclusory allegation that the actions of Hughes and Irwin "were conducted pursuant to a longstanding and widespread practice of the Bowling Green Police Department, sanctioned explicitly and implicitly by municipal policy makers, to use the legal system as a tool for political retribution and to suppress dissent." (2d Am. Compl. ¶ 97). These allegations do not plausibly establish a policy as defined under the four methods in *Burgess*. First, Sharp does not argue "the existence of an illegal official policy or legislative enactment" or "that an official with final decision making authority ratified illegal actions." *Burgess* 735 F.3d at 478. Nor does he allege "the existence of a policy of inadequate training or supervision." *Id.* Sharp appears to rely on the fourth method (i.e., "the existence of a custom of tolerance or acquiescence of federal rights violations"); however, the

allegations stated in the Complaint fail to plausibly assert a causal link between a policy of BGPD and the alleged unconstitutional actions of Hughes and Irwin. *Id.*

In *Monell*, the U.S. Supreme Court stated that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. The Court concluded that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory." *Id.* Even if the actions of Hughes and Irwin constituted unconstitutional conduct, Sharp has not pointed to a specific policy of the City that acted as a "moving force" guiding those officers' actions outside of bare legal conclusions and alleged warnings from "individuals associated with the Defendant's police department." *Id.* at 694; (2d Am. Compl. ¶ 95). Therefore, Sharp has not stated a plausible claim for *Monell* liability, and Sharp's Section 1983 claims against the City are dismissed.

### B.     Hughes and Irwin in their Official Capacities

Sharp has sued Hughes and Irwin "in their official capacities for declaratory relief to redress the policies, practices, or customs that led to [Sharp]'s constitutional harms." (2d Am. Compl. ¶ 4). Regarding Sharp's Section 1983 claims, the U.S. Supreme Court has found that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky. v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). An official-capacity suit "is not a suit against the official personally, for the real party in interest is the entity;" therefore, "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* Stated succinctly, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local

government units can be sued directly for damages and injunctive *or declaratory relief*." *Id.* at 167 n.14 (emphasis added) (citation omitted).

Although the Sixth Circuit has recognized that state officials can be sued in their official capacities for injunctive and declaratory relief (i.e., the *Ex parte Young* exception), this is limited to "official-capacity actions for prospective relief." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 416-17 n.11 (6th Cir. 2019) ("The *Ex parte Young* exception does not, however, extend to any retroactive relief." (citation omitted)); *see also Green v. Mansour*, 474 U.S. 64, 67-68 (1985) (affirming the Sixth Circuit's finding that a claim for declaratory relief "was retrospective in nature" because "such relief could relate solely to past violations of federal law."). Here, Sharp seeks declaratory relief "to redress the policies, practices, or customs that led to [Sharp]'s constitutional harms." (2d Am. Compl. ¶ 4). This relief sought is explicitly retrospective. Thus, the *Ex parte Young* exception does not apply, and the Section 1983 claims against Hughes and Irwin in their official capacities "must look to the government entity itself." *Graham*, 473 U.S. at 166. This Court has already dismissed the Section 1983 claims against the City, finding that Sharp did not state plausible claim for *Monell* liability. For the reasons stated above, the Section 1983 claims against Hughes and Irwin in their official capacities must also be dismissed.

Sharp's official capacity claims under Kentucky state law must be dismissed as well. Under Kentucky law, official capacity claims are also treated as claims against the agent's entity. *Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001) (quoting *Graham*, 473 U.S. at 165-66). Thus, in essence, Sharp's claims against Hughes and Irwin "in their official capacities [are] legally indistinguishable from [his] claim[s] against" the City. *Cabinet for Health & Fam. Servs. v. Hicks*, No. 2009-CA-002186-MR, 2010 WL 3604161, at *3 (Ky. App. Sept. 17, 2010). Because Sharp's

official-capacity claims against Hughes and Irwin are duplicative of the claims against the City which is a party to this action, these official capacity claims are dismissed, and the motion is granted on this basis.

### C. Hughes and Irwin in their Individual Capacities

Sharp has sued Hughes and Irwin "in their individual capacities for monetary damages, as their personal actions directly violated [] [Sharp]'s rights guaranteed by the United States Constitution." (2d Am. Compl. ¶ 4). The following sections analyze the extent to which the officers may be liable for malicious prosecution and false arrest/imprisonment under federal and Kentucky state law.

#### 1. *Malicious Prosecution (Counts V and VI)*

##### a. Malicious Prosecution under Section 1983

Sharp asserts a Section 1983 claim for malicious prosecution under the Fourth Amendment against Hughes and Irwin. To succeed on this claim, a plaintiff must sufficiently allege:

> "that a criminal prosecution was initiated against the plaintiff and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute'"; (2) "that there was a lack of probable cause for the criminal prosecution"; (3) "that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty' . . . apart from the initial seizure"; and (4) that "the criminal proceeding must have been resolved in the plaintiff's favor."

*Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (alterations in original) (quoting *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010)). Defendants argue that because Sharp's criminal prosecution is still pending in state court, his claim fails to meet the fourth element, as his proceeding has not "been resolved in [his] favor." *Id.*; (Defs.' Mem. Supp. Mot. Dismiss 7, 14). Defendants are correct, and Sharp cannot sufficiently plead a Section 1983 malicious prosecution claim without his proceedings in state court terminating in his favor. The U.S. Supreme Court has explicitly stated that this requirement "'avoids parallel litigation over the issues of probable cause

11

and guilt . . . [and supports] a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (quoting 8 S. Speiser, C. Krause, & A. Gans, *American Law of Torts* § 28:5, at 24 (1991)).

Both Sharp and Defendants agree that one potential solution is to stay this case pending resolution of Sharp's state criminal proceeding. *See Younger v. Harris*, 401 U.S. 37 (1971); (Defs.' Mem. Supp. Mot. Dismiss 13-14; Pl.'s Resp. Defs.' Mot. Dismiss 6-7). Staying the case under *Younger*, rather than dismissing, helps "avoid[] the costs of refiling, allows plaintiffs to retain their place on the court docket, and avoids placing plaintiffs in a sometimes difficult position of refiling their case before the statute of limitations expires." *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995). The *Younger* doctrine is appropriate "when the state proceeding [1] is currently pending, [2] involves an important state interest, and [3] affords the plaintiff an adequate opportunity to raise constitutional claims." *Coles v. Granville*, 448 F.3d 853 (6th Cir. 2006) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Here, Sharp's criminal proceeding is currently pending in state court. Regarding important state interests, the Sixth Circuit has stated that "state criminal prosecutions" constitute an "important state interest" for *Younger* abstention, as they "have traditionally been considered an arena in which federal courts decline to interfere." *Leveye v. Metro. Pub. Def.'s Off.*, 73 F. App'x 792, 794 (6th Cir. 2003) (citing *Younger*, 401 U.S. at 43-45). Lastly, abstention will give Sharp the opportunity to present constitutional issues in the appropriate forum.[7] Therefore, Defendants'

---

[7] The Supreme Court has instructed district courts, when implementing *Younger* abstention, to not "assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims[,] [and] . . . when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) (internal citation omitted).

motion to dismiss Sharp's Section 1983 claim of malicious prosecution is denied and the claim is stayed until Sharp's criminal proceedings are terminated.

Defendants also argue that Sharp's claim for malicious prosecution fails because Hughes and Irwin are entitled to absolute immunity in their role as witnesses in a grand jury proceeding. (Defs.' Mem. Supp. Mot. Dismiss 7). Citing *Rehberg v. Paulk*, 566 U.S. 356 (2012), Defendants argue that "a grand jury witness has absolute immunity from any [Section] 1983 claim based on the witness' testimony [and that] this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony . . . ." *Id.* at 369; (Defs.' Mem. Supp. Mot. Dismiss 7). Sharp counters that his claim is not merely based upon the grand jury testimony of Irwin, and instead involves several acts by both Hughes and Irwin prior to the grand jury proceeding, such as "misleading the prosecutor" and falsifying an affidavit, which Sharp contends "was prior to and independent of any grand-jury testimony." (Pl.'s Resp. Defs.' Mot. Dismiss 3-4). Relying on *King v. Harwood*, 852 F.3d 568 (6th Cir. 2017), Sharp maintains that actions such as "falsifying affidavits" and "fabricat[ing] evidence concerning an unsolved crime" fall outside the scope of absolute immunity under *Rehberg*. (Pl.'s Res. Defs.' Mot. Dismiss 2); *King*, 852 F.3d at 584. The Sixth Circuit in *King*, indeed, stated that these types of actions which take place prior to the grand jury proceeding are not representative of "law-enforcement officers who only provide grand-jury testimony." *King*, 852 F.3d at 584. Rather than being afforded absolute immunity, "[o]nly qualified immunity extends to the acts of officers in these [] situations. *Id.*

Because the motion to dismiss phase is not the proper stage of litigation to determine qualified immunity and Sharp has sufficiently pled that some acts of Hughes and Irwin plausibly occurred outside of the grand jury proceeding, Defendants' argument for absolute immunity fails. *See Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) ("[I]t is generally inappropriate for

13

a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (alteration in original) (internal quotation marks omitted) (internal citation omitted) (citation omitted)). Therefore, Defendants' motion to dismiss this claim is denied on these grounds as well, and the claim is stayed under *Younger*.

### b.   Malicious Prosecution under Kentucky State Law

Like Sharp's Section 1983 claim for malicious prosecution, the Kentucky law claim for malicious prosecution also requires that Sharp's criminal proceeding be "terminated in favor of the person against whom it was brought." *Martin v. O'Daniel*, 507 S.W.3d 1, 11 (Ky. 2016), as corrected (Sept. 22, 2016). For the same reasons as stated above, the Court exercises the *Younger* doctrine and abstains from deciding on this claim at this time. *See Younger*, 401 U.S. at 37; (Defs.' Mem. Supp. Mot. Dismiss 13-14; Pl.'s Resp. Defs.' Mot. Dismiss 6-7). Defendants' motion to dismiss the malicious prosecution claim under Kentucky state law against Hughes and Irwin is denied, and the claim is stayed until termination of Sharp's state criminal proceedings.

### 2.   *False Arrest and Imprisonment (Counts I, II, and III)*

#### a.   **False Arrest and Imprisonment under Section 1983**

"Because the elements of false imprisonment and false arrest overlap, the Supreme Court has referred to them 'together as false imprisonment.'" *DeHart v. Perkins*, No. 1:22-CV-00013-GNS, 2022 WL 4279729, at *4 (W.D. Ky. Sept. 15, 2022) (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007)). To successfully state a Section 1983 claim for false imprisonment under the Fourth Amendment, Sharp "must plausibly allege that [his arrest] was unsupported by probable cause." *Wesley*, 779 F.3d at 429 (citation omitted). "An officer possesses probable cause when, at the

moment the officer seeks the arrest, 'the facts and circumstances within [the officer's] knowledge and of which [she] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *Id.* (alterations in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  Defendants argue that probable cause for Sharp's arrest is established by two facts:  (1) the officers acted pursuant to a warrant "before they arrested and detained Sharp"; and (2) "a Warren County grand jury indicted Sharp for the very conduct that inspired his arrest and detention."  (Defs.' Mem. Supp. Mot. Dismiss 11).

      Defendants are correct that officers "are entitled to rely on a judicially secured warrant for immunity from a [Section] 1983 action for illegal search and seizure . . . ." *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989) (citation omitted).  This reliance, however, has limitations:  "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Id.* (citations omitted).  Additionally, Defendants correctly state that "the grand jury's finding creates a presumption of probable cause in later proceedings under [Section] 1983." *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) (citations omitted).  As Sharp correctly notes, a plaintiff may rebut the presumption of probable cause established by a grand jury indictment by demonstrating that "defendants knowingly or recklessly present[ed] false testimony to the grand jury to obtain the indictment." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015).  Moreover, the Sixth Circuit has previously held that "evidence of an officer's actions prior to and independent of his grand-jury testimony may call into question the presumption of probable cause created by an indictment . . . ." *King*, 852 F.3d at 590.  For the purposes of a motion to dismiss, Sharp has plausibly pled that Hughes and Irwin lacked probable cause to arrest him, because he alleges they knowingly or recklessly obtained an arrest warrant

15

"by false statements," and "knowingly and intentionally made false statements in an affidavit of complaint used to initiate criminal proceedings." (2d Am. Compl. ¶¶ 80, 104). Therefore, Defendants' motion to dismiss Sharp's Section 1983 claims for false arrest and false imprisonment is denied. As mentioned previously, Sharp's Section 1983 claims against the City are dismissed for lack of liability under *Monell*.

### b.  False Imprisonment under Kentucky Law

Defendants' motion for dismissal of the state law claim of false imprisonment also rests on the notion that Hughes and Irwin had probable cause to arrest Sharp. (Defs.' Mem. Supp. Mot. Dismiss 11). The Sixth Circuit has stated that "if an officer has probable cause to arrest, [p]laintiffs cannot maintain . . . a [Kentucky] state law claim for false arrest." *Hartman v. Thompson*, 931 F.3d 471 (6th Cir. 2019) (citing *Dunn*, 226 S.W.3d at 71). This Court has determined that "[u]nder Kentucky law, an indictment only creates a rebuttable presumption of probable cause, but that presumption can be rebutted by evidence of improper motive or acts by the defendant in procuring the indictment." *Jackson v. Jernigan*, No. 3:16-CV-00750-JHM, 2017 WL 1962713, at *8 (W.D. Ky. May 11, 2017) (citing *Conder v. Morrison*, 121 S.W.2d 930, 931 (Ky. 1938)).

Further, Kentucky's highest court has stated that although determining "[w]hat facts and circumstances amount to probable cause is a question of law[,] [w]hether they exist or not in any particular case where the evidence is conflicting is a question of fact to be determined by the jury." *Schott v. Ind. Nat'l Life Ins. Co.*, 169 S.W. 1023, 1024 (Ky. 1914); *see also Ostafi v. Gabbard*, No. 2020-CA-1040-MR, 2021 WL 4126868, at *7 (Ky. App. Sept. 10, 2021) (holding that probable cause is a jury question when the evidence creates a factual dispute that the jury must resolve). As discussed earlier, Sharp has plausibly alleged that Defendants lacked probable cause

for his arrest and imprisonment, despite the arrest warrant and grand jury indictment. As such, Defendants' motion to dismiss the state claim of false imprisonment is denied.

### c. Stay under *Younger*

Defendants alternatively argue that if their motion to dismiss the false arrest and false imprisonment claims is denied, these claims should also be stayed under *Younger* until Sharp's state criminal proceeding has concluded. (Defs.' Mem. Supp. Mot. Dismiss 13-14). Sharp counters that *Younger* abstention in inappropriate "where the statute of limitations has [] already begun." (Pl.'s Resp. Defs.' Mot. Dismiss 6). He argues that because (1) the statute of limitations has already begun to run on both the state and federal false arrest/imprisonment claims[8] and (2) the "claims are not determinative of the state court proceedings," that "the *Younger* [doctrine] should not apply and this case should not be stayed." (Pl.'s Resp. Defs.' Mot. Dismiss 7). This argument, however, ignores the U.S. Supreme Court's guidance on the matter:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.

*Wallace*, 549 U.S. at 393-94. This principle has been widely adopted across the Sixth Circuit, including by this Court. *See, e.g.*, *Thompson v. Jenkins*, No. 4:22-CV-P57-JHM, 2024 WL 4545988, at *1 (W.D. Ky. Oct. 22, 2024); *Ward v. Borders*, No. 3:16-CV-393-RGJ-RSE, 2021 WL 4487605, at *1 (W.D. Ky. Sept. 30, 2021).

---

[8] For this contention, Sharp asserts that "[a] [Section] 1983 cause of action for false arrest accrues on the date the arrest was made." *Struckman v. Vill. of Lockland*, No. 1:17-CV-00543, 2018 WL 3231487, at *3 (S.D. Ohio July 2, 2018) (citing *Black-Hosang v. Ohio Dep't of Pub. Safety*, 96 F. App'x 372, 374 (6th Cir. 2004) (citation omitted). "The limitations period for a false imprisonment claim begins to run when the false imprisonment ends, which occurs when legal process is initiated." *Id.* (citing *Wallace*, 549 U.S. at 389-90).

Because Sharp's false arrest and imprisonment claims "relate[] to rulings that will likely be made in [his] pending [] criminal trial," the Court exercises *Younger* abstention and stays the claims until the conclusion of those proceedings.

### D. State Law Claims against the City under *Respondeat Superior*

Regarding the state law malicious prosecution claim against the City, Sharp is required to plausibly assert that the City is liable for the alleged conduct of Hughes and Irwin under the theory of *respondeat superior*. The Kentucky Supreme Court has relied upon the Restatement Third of Agency in determining when to apply the doctrine of *respondeat superior*:

(1) An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.

(2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

*Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 51 (Ky. 2008) (quoting Restatement (Third) of Agency § 7.07 (Am. L. Inst. 2006)). This type of liability is appropriate only where Sharp has successfully alleged that the employees (i.e., Hughes and Irwin), acting for the employer (i.e., the City), committed a tort against Sharp. Because Sharp cannot establish a state claim for malicious prosecution while his criminal proceeding is ongoing, the *respondeat superior* claim against the City is also stayed under *Younger*. Defendants' motion to dismiss the state malicious prosecution claim against the City is denied, and the claim is stayed until termination of Sharp's state criminal proceeding.[9]

---

[9] Defendants did not address the City's alleged *respondeat superior* liability for Sharp's state law claim of false imprisonment in their motion to dismiss. In fact, Defendants' argument for the dismissal of claims against the City addresses only *Monell* liability for the Section 1983 claims, which this Court has granted. Because Defendants do not assert that the City is not liable for Sharp's state tort claim of false imprisonment and Sharp has plausibly pled a lack of probable cause for his arrest, the motion to

18

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 25) is **GRANTED IN PART** and **DENIED IN PART**.

1. Both Section 1983 claims against Defendant City of Bowling Green (Count II - false imprisonment; Count IV- unconstitutional policy or custom) are **DISMISSED.**

2. All claims against Defendants Hughes and Irwin in their official capacities are **DISMISSED.**

3. The following claims are **STAYED** under *Younger* pending the resolution of Plaintiff's criminal proceedings: (1) Count I (false arrest under Section 1983) against Defendants Hughes and Irwin; (2) Count II (false imprisonment under Kentucky state law) against all Defendants; (3) Count III (false imprisonment under Section 1983) against Defendants Hughes and Irwin; (4) Count V (malicious prosecution under Section 1983) against Defendants Hughes and Irwin; and (5) Count VI (malicious prosecution under Kentucky state law) against all Defendants.

Greg N. Stivers, Chief Judge
United States District Court

December 10, 2024

cc: counsel of record
Robert Andrew Sharp, Jr., *pro se*

---

dismiss this claim against the City is also denied. The claim is stayed under *Younger* until the termination of Sharp's ongoing state proceedings.